GENERAL FINANCE CO., APPELLANT, v. POWELL ET AL., RESPONDENTS.

(No. 8,216.)

(Submitted October 30, 1941.   Decided November 5, 1941.)

[118 Pac. (2d) 751.]

*Messrs. Swanberg & Swanberg,* for Appellant, submitted a brief; *Mr. Stephen M. Swanberg* argued the cause orally.

*Mr. W. P. Costello,* for Respondents, submitted a brief and argued the cause orally.

MR. CHIEF JUSTICE JOHNSON delivered the opinion of the court.

This is an appeal from an order dissolving an attachment. The motion to dissolve was made "upon the pleadings, records and minutes of the court" and was based upon the ground, among others, that the action was not upon a contract for the direct payment of money, as required by section 9256, Revised Codes.

Plaintiff filed an amended complaint before the hearing, but the trial judge's certificate to the bill of exceptions shows that the original complaint also was made part of the plaintiff's showing on the motion, apparently without objection.

The original complaint recited that the defendant had sold an air-compressor to Surmi Mines, Inc., for $1,099, and that the defendant "sold, assigned and transferred all his right, title and interest in and to said contract to plaintiff herein, and did

further guarantee full and faithful performance by the said purchaser of all the conditions of said contract'' for a valuable consideration; that $400 was due and unpaid; that plaintiff requested payment of defendant; that defendant failed ''to pay or otherwise secure said contract and plaintiff does hereby declare said contract and the whole thereof, to be in default and upon the date hereof there is the sum of $699.00 due on said contract; that simultaneously with the making of said assignment to plaintiff herein, plaintiff executed two deferred certificates in the amount of $150.00 payable to the defendant and at the time of the commencement of this action only one of said certificates has been paid and plaintiff is by reason of such indebted to defendant in the sum of $150.00''; and that $50 was a reasonable attorney's fee for plaintiff's attorney. The prayer was for judgment ''for the sum of $549.00 principal, together with interest thereon at the rate of six per cent. per annum, according to law'' with costs and $50 attorney's fee. Thus the action was to recover the balance of $699 principal due from the defaulting purchaser on the conditional sales contract, with interest, under defendant's guaranty of its payment, less $150 admitted to be owing from plaintiff to defendant, or $549 and interest. Neither the sales contract, the assignment, nor the ''deferred certificates'' were set forth in the complaint.

The amended complaint recites the sale and the assignment of the contract to plaintiff, pleads as an exhibit the conditional sales contract with defendant's assignment and guaranty agreement endorsed on it, and alleges that upon the making of the contract the purchaser paid $100 down (leaving $999 unpaid); that on receiving the assignment plaintiff paid defendant $600 and delivered to him ''two certain deferred certificates each in the amount of $150.00, providing that the sum therein expressed in each would be paid unto defendant upon the fulfillment of said contract''; and that thereafter defendant paid plaintiff $300 ''as and for payments upon said contract.'' The wording and substance of the ''deferred certificates'' is not pleaded, nor is it directly averred that plaintiff has paid anything on them. But demand upon and default by both purchaser and defendant

of the unpaid balance under the conditional sales contract is alleged, and it is further alleged that upon the default "there became due and owing from defendant to plaintiff, the sum of $600.00, being the amount paid by plaintiff to defendant for the assignment of said contract, plus the sum of $150.00, being the amount paid to defendant on one of the deferred certificates hereinbefore mentioned, less the sum of $300.00 paid by defendant to plaintiff as and for payments upon said contract, or a net sum of $450.00; which said sum plaintiff has demanded of defendant without avail."

Thus, while in the original complaint the plaintiff sought to enforce defendant's guaranty of the purchaser's performance of the conditional sales contract by collecting the defaulted $699, less $150 admittedly due by plaintiff to defendant, or $549, with interest, plaintiff apparently seeks in the amended complaint to construe the guaranty as a direct promise by defendant, upon the purchaser's default, to repay the $750 paid by plaintiff for the assignment, less the $300 repaid by defendant, or $450; but the prayer is still "for the sum of $549 principal" with interest.

The assignment and guaranty endorsed on the contract as pleaded in the complaint is as follows:

"For value received, the undersigned hereby sells, assigns, and transfers to General Finance Co., of G. F. its successors or assigns, all right, title and interest in and to the within contract, the amounts payable thereunder, the property therein described, and the rights therefrom ensuing. The undersigned hereby guarantees the full performance of said contract and prompt payment of all sums due thereunder, together with all collection expenses; that the merchandise described in the contract was actually delivered and accepted by purchaser named therein; that nothing has been done to limit or affect the validity of said contract. The undersigned agrees that any extension, compromise or settlement that may be granted or made by the holder hereof to or with the parties to said contract shall not in any manner release the undersigned."

The latter clearly constitutes a sale by defendant to plaintiff of the property conditionally sold to the mining company, an assignment of defendant's right, title and interest in the conditional sales contract, and a guaranty of "the full performance of said contract and prompt payment of all sums due thereunder," etc.

So far as the complaints disclose, the cause of action does not involve either a negotiable or non-negotiable note, nor do they mention the continued existence or the value of plaintiff's air-compressor.

The record shows that a general and special demurrer to the amended complaint was sustained, but not what was done subsequently. However, it is not necessary to determine whether any cause of action is stated, since the present inquiry is only to ascertain whether the cause, adequately or inadequately stated, is upon a contract for the direct payment of money. (*Heffron* v. *Thomas*, 61 Mont. 10, 201 Pac. 572.) The latter case held also that an implied promise to refund the consideration upon a breach of the warranty of title is not a contract for the direct payment of money. The defendant's supposed implied warranty to refund the consideration, under the circumstances of the present case, would seem entirely analogous; but it is not necessary to decide that point, for the facts pleaded are not that the defendant impliedly promised to repay plaintiff's $450 in case the purchaser should default, but that he guaranteed that the purchaser would not default, which, however, seems to have been done to the extent of $699. Plaintiff's cause of action, therefore, is not upon his promise to repay $450, but upon his guaranty to stand good for the purchaser's default of $699, against which plaintiff allows the defendant a set-off of $150, reducing the amount to $549, with interest.

Only two contracts are shown by the complaints. The first is the purchaser's contract to pay defendant for the compressor, to which plaintiff succeeded by the assignment. The second is the defendant's guaranty of the purchaser's performance of the first. Thus no contract for the direct payment of money by

the defendant is pleaded unless his guaranty of the purchaser's performance can be so construed.

The attachment law is purely of statutory origin and while, like other statutes, it must be liberally construed to effect its object (sec. 4, Rev. Codes), the courts have not the right under the guise of liberal construction to read into the statute any meaning which its words, construed according to the statutory rules, do not convey. To construe a statute is to ascertain the intent of the legislature (sec. 10520, Rev. Codes), and not to substitute the court's discretion for that of the legislature (sec. 10519, Rev. Codes). Consequently our duty is to decide the meaning of the legislature's words, construed ordinarily according to the context and the approved usage of the language (sec. 15, Rev. Codes). The question is simply this: Is a guaranty of "the full payment of said contract and prompt payment of all sums due thereunder" a contract for the direct payment of money?

As pointed out by this court in *Ancient Order of Hibernians* v. *Sparrow*, 29 Mont. 132, 74 Pac. 197, 101 Am. St. Rep. 563, 1 Ann. Cas. 144, 64 L. R. A. 128, the word "direct" first appeared in our attachment statute in 1866 and again as the statute was re-enacted in 1867 after the congressional invalidation of the 1866 legislation (14 Stat. 427), was omitted in 1869, and reinserted in 1895. Therefore there can be no doubt that the legislature attached some substantial meaning to the word. "Direct" is defined by Webster's New International Dictionary (Webster-Merriam, 2d ed.) as denoting "the absence of any intervening medium or influence"; as meaning "marked by the absence of an intervening agency or influence." Obviously defendant's guaranty of the purchaser's performance of the conditional sales contract is not a contract for the direct payment of money, since defendant's liability is conditioned entirely upon an intervening medium, agency or influence—namely, upon the purchaser's default, which as to eventuality, time and amount was entirely problematical. If it is to be construed as a contract for the direct payment of money, it is hard to imagine any

contract for the payment of money which is not for its direct payment.

This court has long held that the term meant an unconditional and absolute obligation to pay money (*Ancient Order of Hibernians* v. *Sparrow,* supra; *Heffron* v. *Thomas,* supra; *Wall* v. *Brookman,* 72 Mont. 228, 232 Pac. 774), and not a collateral agreement dependent or contingent upon some other agreement (*Square Butte State Bank* v. *Ballard,* 64 Mont. 554, 210 Pac. 889; *Gilna* v. *Barker,* 78 Mont. 343, 254 Pac. 169). In the *Square Butte Bank Case* suit was brought upon defendant's contract of guaranty that "for value received I hereby guarantee the collection and payment of the within note," and it was held that the guaranty, being dependent upon the contingency of the debtor's breach of another contract, was not a contract for the direct payment of money. In *Wall* v. *Brookman,* supra, this court went so far as to suggest that the elimination of the word "direct" from the statute would be beneficial, but as the legislature has not seen fit to eliminate it, the courts may not overrule the legislature in order to do so.

The judgment is therefore affirmed.

ASSOCIATE JUSTICES ANGSTMAN, ERICKSON, ANDERSON and MORRIS concur.